# Matter of R. I. ORTEGA, Beneficiary of a visa petition filed by Celeste Argentina Rodridguez De Ortega, Petitioner

*Decided June 19, 2020*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) An alien who has conspired to enter into a marriage for the purpose of evading the immigration laws by seeking to secure a K-1 fiancé(e) nonimmigrant visa is subject to the bar under section 204(c)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c)(2) (2018).

(2) For purposes of section 204(c)(2) of the Act, a conspiracy requires an agreement to enter into a marriage for the purpose of evading the immigration laws and an overt act in furtherance of that agreement.

FOR PETITIONER: Jorge Guttlein, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Peter N. Schmalz, Deputy Chief

BEFORE: Board Panel: MALPHRUS, MULLANE, and LIEBOWITZ, Appellate Immigration Judges.

MALPHRUS, Appellate Immigration Judge:

In a decision dated the November 13, 2017, the Field Office Director ("Director") revoked the approval of the visa petition filed by the petitioner on behalf of the beneficiary, holding that the approval is barred by section 204(c) of the Immigration and Nationality Act, 8 U.S.C. § 1154(c) (2012). The petitioner has appealed from that decision. The appeal will be dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts of this case are not in dispute. The petitioner is a United States citizen, and the beneficiary, her son, is a native and citizen of the Dominican Republic. On November 17, 2004, the beneficiary's then-fiancée, a United States citizen, filed a Petition for Alien Fiancé(e) (Form I-129F) on his behalf. The petition was approved on November 29, 2004. The beneficiary appeared for an interview at the United States Consulate in Santo Domingo on July 7, 2005, after which the case was referred for a dual interview.

During that interview, the beneficiary and his fiancée provided inconsistent answers in response to questions about their relationship. On June 21, 2006, the United States Citizenship and Immigration Services ("USCIS") informed the beneficiary's fiancée of its intent to revoke the approval of the visa petition, because it had determined that the beneficiary attempted or conspired to enter into a marriage for the purpose of evading the immigration laws. No response was received, and the visa petition was terminated on February 13, 2007. It is undisputed that the beneficiary's engagement with his former fiancée was not bona fide.

On June 12, 2008, the petitioner filed a Petition for Alien Relative (Form I-130) to accord the beneficiary preference status as her unmarried son under section 203(a)(1) of Act, 8 U.S.C. § 1153(a)(1) (2006). The petition was approved on August 11, 2008. On September 12, 2017, the USCIS informed the petitioner of its intent to revoke the approval of the visa petition on the grounds that the approval is barred by operation of section 204(c) of the Act. The petitioner filed a response to the notice of intent to revoke, which was received by the USCIS on October 17, 2017. The Director revoked the approval of the visa petition, and the petitioner has appealed.

The issue presented in this case is whether an alien who has entered into a fictitious or "sham" engagement that served as the basis for a K-1 nonimmigrant fiancé(e) visa petition has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws and is therefore subject to the bar at section 204(c) of the Act. We review all issues arising in visa petition appeals de novo. 8 C.F.R. § 1003.1(d)(3)(iii) (2020).

## II. ANALYSIS

The petitioner contests the Director's revocation of the approval of the visa petition she filed on the beneficiary's behalf. Under section 205 of the Act, 8 U.S.C. § 1155 (2018), the approval of a visa petition may be revoked for "good and sufficient cause." *Matter of Ho*, 19 I&N Dec. 582, 588 (BIA 1988). Good and sufficient cause to revoke an approved visa petition exists if the evidence in the record at the time of the decision, including explanatory and rebuttal evidence, warrants a denial based on the petitioner's failure to sustain his or her burden of proof. *See Matter of Estime*, 19 I&N Dec. 450, 451–52 (BIA 1987).

Before a decision revoking the approval of a visa petition can be issued, a notice of the Director's intent to revoke must be sent to the petitioner, and the petitioner must be afforded an opportunity to rebut derogatory evidence and to present evidence in support of the visa petition. *See* 8 C.F.R. § 103.2(b)(16)(i)–(ii) (2020); *see also Matter of Obaigbena*, 19 I&N Dec. 533, 536 (BIA 1988). As is the case in the underlying visa petition

proceedings, the petitioner bears the ultimate burden of proof in visa petition revocation proceedings. *Matter of Ho*, 19 I&N Dec. at 589.

## A. Section 204(c) of the Act

Section 204(c) of the Act provides, in pertinent part, that

> no petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

A visa petition will be denied (or revoked) pursuant to section 204(c)(2) of the Act where there is substantial and probative evidence in the record that the beneficiary previously attempted or conspired to enter into a fraudulent marriage.[1] *See Matter of P. Singh*, 27 I&N Dec. 598, 602 (BIA 2019); 8 C.F.R § 204.2(a)(1)(ii) (2020) ("The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy, regardless of whether that alien received a benefit through the attempt or conspiracy."); *see also Matter of Kahy*, 19 I&N Dec. 803, 807 n.3 (BIA 1988) (stating that an alien who agreed to pay a United States citizen to marry him so that he would not have to return to his native country "attempted or conspired to enter into a marriage for the purpose of evading the immigration laws" at the point they reached the agreement, prior to the actual marriage). The terms "attempted" and "conspired" are not defined in the Act.

## B. K-1 Nonimmigrant Visa Petitions

The fiancé or fiancée of a United States citizen who qualifies for a nonimmigrant visa under section 101(a)(15)(K)(i) of the Act, 8 U.S.C.

---

[1] Prior to 1986, the section 204(c) bar was inapplicable if an alien did not actually enter into a marriage. *See Matter of Anselmo*, 16 I&N Dec. 152, 153 (BIA 1977) ("In the absence of an actual marriage, section 204(c) does not apply."); *Matter of Concepcion*, 16 I&N Dec. 10, 11 (BIA 1976) (holding that an alien who acquired immediate relative status based on falsified documents was not subject to the section 204(c) bar because her marriage never took place and was, in fact, a fiction). This is no longer the case after the enactment of section 4(a) of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, 3543, which added the language now found in section 204(c)(2) of the Act. *See Matter of Isber*, 20 I&N Dec. 676, 677–78 (BIA 1993) (discussing the legislative history of section 204(c) of the Act).

§ 1101(a)(15)(K)(i) (2018), as one "who seeks to enter the United States solely to conclude a valid marriage with the petitioner within ninety days after admission," may be issued a nonimmigrant visa pursuant to section 214(d)(1) of the Act, 8 U.S.C. § 1184(d)(1) (2018). Section 214(d)(1) provides that a petition for such a visa must be supported by evidence to establish that the parties "have previously met in person within 2 years before the date of filing the petition, have a bona fide intention to marry, and are legally able and actually willing to conclude a valid marriage in the United States within a period of ninety days after the alien's arrival."

A central element for establishing K-1 visa eligibility is that the parties have a bona fide intention to marry. The only purpose of a K-1 visa is to allow the fiancé(e)s of United States citizens to enter the United States to be married, since they cannot qualify as bona fide nonimmigrants and, until married, may not have an immigrant visa available to them. *See Matter of Sesay*, 25 I&N Dec. 431, 435–38 (BIA 2011) (discussing the history of the K-1 visas). Under section 245(d) of the Act, 8 U.S.C. § 1255(d) (2018), the beneficiary of a K-1 visa can only adjust status based on the marriage to the fiancé(e) petitioner. *Id.* at 442 ("Unlike other categories of adjustment applicants, who can adjust through another family relationship or an employer, there is no other option for the fiancé(e)."); *see also Matter of Valenzuela*, 25 I&N Dec. 867, 870–71 (BIA 2012) (explaining that Congress imposed this restriction on K visa holders as part of its efforts to combat marriage fraud).

Unlike most other nonimmigrant visas, K-1 visas provide the visa holder with a direct path to permanent status in the United States. As a result, K-1 visa holders have always been treated as the functional equivalents of immediate relatives for purposes of immigrant visa eligibility and availability. *Matter of Sesay*, 25 I&N Dec. at 438–39. There is no requirement for a Form I-130 immigrant visa petition to be filed for a K-1 visa holder because the adjustment of status application is predicated on the nonimmigrant Form I-129F visa petition itself. *Id.* at 439.

## C. Petitioner's Appeal

The beneficiary's conduct in support of the K-1 visa petition filed on his behalf supports the Director's determination that he conspired to enter into a marriage for the purpose of evading the immigration laws.

Under settled rules of statutory construction, we look first to the plain meaning of the language, and we are required to give effect to Congress' unambiguously expressed intent. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Matter of E-S-I-*, 26 I&N Dec. 136, 139 (BIA 2013). The intent of Congress is presumed to be expressed

by the ordinary meaning of the words used. *INS v. Cardoza Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Munroe*, 26 I&N Dec. 428, 431 (BIA 2014).

For purposes of section 204(c)(2) of the Act, a conspiracy requires an agreement to enter into a marriage for the purpose of evading the immigration laws and an overt act in furtherance of that agreement. Section 204(c)(2) of the Act does not require a criminal conviction. 8 C.F.R § 204.2(a)(1)(ii) (stating that "it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy"). Rather, the bar is triggered when "the Attorney General has determined" that a beneficiary has conspired to enter into a marriage for the purpose of evading the immigration laws. Section 204(c)(2) of the Act. For the Attorney General to make such a "determination," there must be an overt act. The filing of a visa petition is an overt act in furtherance of the conspiracy. It is not enough, however, if two parties merely "agree" to enter into a marriage for the purpose of evading the immigration laws but never engage in any other action or conduct that furthers that agreement.[2]

The petitioner has not meaningfully challenged the Director's determination that the beneficiary entered into a sham engagement with his former fiancée for the purpose of evading the immigration laws. She has made no claim that their relationship was legitimate or anything other than a sham.[3]

In her supplemental brief, the petitioner asserts, without further explanation, that "there is no evidence showing [the beneficiary] had an intent to enter into a fraudulent marriage while in the Dominican Republic." This contention is irrelevant because the focus of our inquiry is whether the beneficiary intended to enter into a fraudulent marriage with his former fiancée in the United States, which would ultimately allow him to adjust his status and thereby evade the immigration laws. The petitioner does not claim

---

[2] In a different context, we concluded that the term conspiracy, as used in section 101(a)(43)(U) of the Act, is not limited to conspiracies that require the commission of an overt act in furtherance of the conspiracy by one of the conspirators. *Matter of Richardson*, 25 I&N Dec. 226, 228 (BIA 2010). This conclusion was based largely on the common law meaning of the term "conspiracy" and an analysis of various State and Federal statutes defining the elements of the crime of conspiracy. *Id.* at 227–30. *But see Quinteros v. Att'y Gen. of U.S.*, 945 F.3d 772, 783–85 (3d Cir. 2019) (holding that an overt act is an element of the generic definition of conspiracy); *United States v. Garcia-Santana*, 774 F.3d 528, 543 (9th Cir. 2014) (same). Because the statutory language in section 204(c)(2) of the Act is different from the language in section 101(a)(43)(U), we see no tension between the two different approaches.

[3] In her appeal brief, the petitioner appears to concede that the beneficiary is inadmissible under section 212(a)(6)(C)(i) of the Act, 8 U.S.C. § 1182(a)(6)(C)(i) (2018), as an alien who sought to procure a visa by fraud or willful misrepresentation of a material fact, as a result of his efforts to obtain a K-1 nonimmigrant visa based on a sham relationship.

that the beneficiary had no intent to marry his former fiancée in the United States. Nor has she presented or identified any evidence that would establish such a claim.

By initially approving the K-1 visa filed on behalf of the beneficiary, the USCIS necessarily determined that he intended to marry his former fiancée in the United States, and that determination was reasonable in light of the parties' representations. As discussed, the purpose of a K-1 visa is to allow a beneficiary to enter the United States solely to conclude a valid marriage with the fiancé(e) petitioner, and the parties' bona fide intention to marry is a central element to establishing K-1 visa eligibility. By seeking a K-1 visa and appearing for interviews in support of the visa petition, the beneficiary and his fiancée represented that they had a bona fide intention to marry and were actually willing to conclude a valid marriage within 90 days after the beneficiary's arrival in the United States. This conduct supported the Director's decision to approve the K-1 visa petition, because it evidenced their agreement to enter into a legal marriage and their actual intent to do so. Both the filing of the visa petition and their conduct during the interviews constitute overt acts in furtherance of this agreement.

The petitioner has not identified what the beneficiary intended to do after obtaining a K-1 visa if it was not to marry his former fiancée. An alien admitted to the United States on a K-1 visa cannot adjust his or her status based on an immigrant visa petition filed by another relative or an employer. Moreover, a K-1 visa holder cannot remain in the United States if he or she does not marry the petitioner within 90 days after admission. In the absence of any evidence to rebut the substantial and probative evidence the Director relied on in making her determination to revoke the approval of the visa petition, we agree that the beneficiary conspired to enter into a marriage for the purpose of evading the immigration laws.

The petitioner argues that the visa petition she filed on behalf of the beneficiary should not have been revoked because section 204(c) of the Act does not apply to actions undertaken to obtain a nonimmigrant visa. We disagree. Section 204(c)(1) of the Act, by its text, is limited to aliens who have been accorded, or sought to be accorded, an immigrant visa. In contrast, section 204(c)(2) is triggered if "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." Nothing in the language of Act supports the petitioner's claim that section 204(c)(2) applies only in cases where the beneficiary previously obtained, or sought to obtain, an immigrant visa. Under the plain language of the statute, an alien who has conspired to enter into a marriage for the purpose of evading the immigration laws by seeking to secure a K-1 fiancé(e) nonimmigrant visa is subject to the bar under section 204(c)(2) of the Act.

This case is factually distinguishable from *Matter of Christo's, Inc.*, 26 I&N Dec. 537 (AAO 2015), in which the Administrative Appeals Office determined that an alien who was previously the beneficiary of a Form I-130 based on a nonexistent, fictitious marriage to a United States citizen was not subject to the section 204(c) bar. The Administrative Appeals Office held that an alien who submitted false documents representing a nonexistent or fictitious marriage, but who never either entered into or attempted or conspired to enter into a marriage, may intend to evade the immigration laws but is not, by such act alone, considered to have "entered into" or "attempted or conspired to enter into" a marriage for purposes of section 204(c) of the Act.

In that case, the beneficiary never met or married the petitioner and first realized that he was the subject of a marriage-based immigrant visa petition when he appeared for an interview and was asked about the purported marriage. *Id.* at 541 n.4. *Matter of Christo's, Inc.*, is a narrow decision that only applies to situations where the beneficiary "never met or married" the petitioner. *Id.* In contrast, the beneficiary in this case attended two separate interviews in support of the visa petition filed on his behalf, during which he maintained that he was in a bona fide relationship with his fiancée.[4]

The record contains substantial and probative evidence that the beneficiary previously conspired to enter into a marriage for the purpose of evading the immigration laws. We therefore conclude that the Director had good and sufficient cause to revoke the approval of the visa petition because its approval is barred by operation of section 204(c) of Act. Accordingly, the petitioner's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

[4]  Because we conclude that this case is factually distinguishable from *Matter of Christo's, Inc.*, we need not address the extent to which decisions of the Administrative Appeals Office are authoritative for purposes of our own adjudications.